Form 240A - Reaffirmation Agreement (1/07)

☑ Presumption of Undue Hardship
☐ No Presumption of Undue Hardship
(Check box as directed in Part D: Debtor's Statement in Support of Reaffirmation Agreement.)

# UNITED STATES BANKRUPTCY COURT

Eastern District of Wisconsin

In re Cheryl Mayer, Debtor

Case No. 09-25196
Chapter 7

## REAFFIRMATION AGREEMENT

*[Indicate all documents included in this filing by checking each applicable box.]*

☑ Part A: Disclosures, Instructions, and Notice to Debtor (pages 1 - 5)

☑ Part B: Reaffirmation Agreement

☑ Part C: Certification by Debtor's Attorney

☑ Part D: Debtor's Statement in Support of Reaffirmation Agreement

☐ Part E: Motion for Court Approval

*[Note: Complete Part E only if debtor was not represented by an attorney during the course of negotiating this agreement.]*

**Name of Creditor:** HSBC BANK NEVADA, N.A. - BEST BUY CO., INC.

☐ *[Check this box if]* Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the Federal Reserve Act

## PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

### 1. DISCLOSURE STATEMENT

***Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:***

**SUMMARY OF REAFFIRMATION AGREEMENT**

This Summary is made pursuant to the requirements of the Bankruptcy Code.

**AMOUNT REAFFIRMED**

The amount of debt you have agreed to reaffirm: $ 1,300.00

***The amount of debt you have agreed to reaffirm includes all fees and costs (if any) that have accrued as of the date of this disclosure. Your credit agreement may obligate you to pay additional amounts which may come due after the date of this disclosure. Consult your credit agreement.***

**Form 240A - Reaffirmation Agreement (Cont.)**

**ANNUAL PERCENTAGE RATE**

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

a. If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i) The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement: ______%.

*--- And/Or ---*

(ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: ____0____%. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$________ @ ________%;
$________ @ ________%;
$________ @ ________%.

b. If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (I) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i) The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed: ________%.

--- And/Or ---

(ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____0_____%. If different simple interest rates apply to different balances included in the amount reaffirmed,

the amount of each balance and the rate applicable to it are:
$ ________ @ ________%;
$ ________ @ ________%;
$ ________ @ ________%.

c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

| Item or Type of Item | Original Purchase Price or Original Amount of Loan |
|---|---|
| Notebook Computer, DVD Player, 19" TV | 1,508.08 |

*Optional---At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:*

**Repayment Schedule:**

Your first payment in the amount of $________ is due on ________(date), but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

*— Or —*

Your payment schedule will be: 26 (number) payments in the amount of $ 50.00 each, payable (monthly, annually, weekly, etc.) on the 20 (day) of each month ( week, month, etc.), unless altered later by mutual agreement in writing. Beginning 09/20/09 to Rausch, Associates

*— Or —*

A reasonably specific description of the debtor's repayment obligations to the extent known by the creditor or creditor's representative.

## 2. INSTRUCTIONS AND NOTICE TO DEBTOR

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. If the creditor is not a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. If the creditor is a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

## YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

**Frequently Asked Questions:**

What are your obligations if you reaffirm the debt? A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

Are you required to enter into a reaffirmation agreement by any law? No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

What if your creditor has a security interest or lien? Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the security property if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the security property, as agreed by the parties or determined by the court.

**NOTE:** When this disclosure refers to what a creditor "may" do, it does not use the word "may" to give the creditor specific permission. The word "may" is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

Form 240A - Reaffirmation Agreement (Cont.)

**PART B: REAFFIRMATION AGREEMENT.**

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement:

   Revolving credit, granting a purchase money security interest in items purchased on this account.

2. Description of any changes to the credit agreement made as part of this reaffirmation agreement:

   Interest rate reduced to (0) %.
   Payment provisions changed.

SIGNATURES(S):

Debtor/Borrower:

Cheryl Mayer
(Print Name of Debtor)

[signature]
(Signature)

Date: 5/20/09

Joint Debtor/Co-borrower,
If also reaffirming these debts:

______________________
(Print Name of Joint Debtor)

______________________
(Signature)

Date: ______________________

Accepted by creditor: [Must include Name and Address of Creditor]

Name of Creditor: HSBC BANK NEVADA, N.A. - BEST BUY CO., INC.
(Printed Name of Creditor)

Address of Creditor: C/O Bass & Associates, P.C.
3936 E. Ft. Lowell Suite 200
Tucson, AZ 85712

[signature]
(Signature of Creditor Representative)

Jennifer Pursley
(Printed Name and Title of Individual Signing for Creditor)

Date of creditor acceptance:

8/31/09

**PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).**

*[To be filed only if the attorney represented the debtor during the course of negotiating this agreement.]*

I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ *[Check box, if applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney: Robert J. Asson

Signature of Debtor's Attorney: ________________

Date: 5/20/09

**Form 240A - Reaffirmation Agreement (Cont.)** 8

**PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT**

*[Read and complete sections 1 and 2, OR, if the creditor is a Credit Union and the debtor is represented by an attorney, read section 3. Sign the appropriate signature line(s) and date your signature. If you complete sections 1 and 2 and your income less monthly expenses does not leave enough to make the payments under this reaffirmation agreement, check the box at the top of page 1 indicating "Presumption of Undue Hardship." Otherwise, check the box at the top of page 1 indicating "No Presumption of Undue Hardship"]*

★ please complete

1. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $2407.41 and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $2456.00, leaving $-49.99 to make the required payments on this reaffirmed debt.

I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here: have school expenses beginning Sept. 09 [illegible]

**(Use an additional page if needed for a full explanation.)**

2. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

★Signed: [signature]
(Debtor)

____________________
(Joint Debtor, if any)

★Date: 5/20/09

— Or —

*[If the creditor is a Credit Union and the debtor is represented by an attorney]*

3. I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: ____________________
(Debtor)

____________________
(Joint Debtor, if any)

Date: ____________

BEST BUY
0001047
APPLETON, WI 54915
Store Phone Number 920 738 4537

SALE

Order: Date: 12/13/06 12:48 PM Term ID: 055 Cashier#: 757508

| Product Code | Description | Quantity | Amount |
|---|---|---|---|
| 1478804 | SOFTWARE INSTALL | 1 | 29.00 |
| 1478804 | SOFTWARE INSTALL | 1 | 29.00 |
| 7293699 | SPY SWEEPER GS PRECINCT DVD | 1 | 16.00 |
| 8033282 | NAV 2007 GS | 1 | 26.00 |
| 3984825 | COMPUTER OPTIMIZATION | 1 | 29.00 |
| 8032498 | C304NR/CEL M 420/512/80/COMB | 1 | 449.99 |
| 7863662 | 3YR $400-$599.99 ADH NOTEBOO | 1 | 249.99 |
| 8123176 | GO - GEEK SQUAD | 1 | 0.00 |
| 7250903 | REWARD ZONE JOIN | 1 | 0.00 |
| | | Subtotal | 828.98 |
| | | Tax | 41.45 |
| | | Total | 870.43 |

Acct#: XXXXXXXXXXXX9544
Payment Type: BBC CARD
Amount: 870.43
Card Type: PL2
Tran#: 4702862
Auth#: 064146
Auth-CD: ELEC
Manual Tran Ind:
Signature:

KEEP YOUR RECEIPT!
I HAVE READ AND AGREE TO ALL RETURN AND REFUND POLICIES PRINTED ON THE BACK OF THIS RECEIPT AND POSTED IN THE STORE. I HAVE RECEIVED GOODS AND/OR SERVICES IN THE AMOUNT SHOWN ABOVE.
BESTBUY.COM RETURN AND EXCHANGE INFORMATION AND PRICE MATCH POLICY MAY VARY SLIGHTLY FROM IN-STORE POLICY. PLEASE LOG ONTO WWW.BESTBUY.COM FOR COMPLETE DETAILS
>>>>>>> ELECTRONIC COPY <<<<<<<

BEST BUY
0001047
APPLETON, WI 54915
Store Phone Number 920 738 4537

SALE

| Order: | Date: 03/09/08 05:06 PM | Term ID: 004 | Cashier#: 859027 |
|---|---|---|---|

| Product Code | Description | Quantity | Amount |
|---|---|---|---|
| 7506335 | 10PK DVD+R | 1 | 8.99 |
| 0054265 | 6' Y ADAPTOR/3.5 TO RCA JACK | 1 | 5.99 |
| 5426693 | REWARD ZONE CARD | 1 | 0.00 |
| 8267617 | SONY MHCEC77 MINI SHELF SYST | 1 | 160.99 |
| 5221734 | CD/DVD COMPACT LABEL MAKER | 1 | 11.49 |
| | | Subtotal | 187.46 |
| | | Tax | 9.37 |
| | | Total | 196.83 |

Acct#: XXXXXXXXXXXX9544
Payment Type: BBC CARD
Amount: 196.83
Card Type: PL2
Tran#: 4701083
Auth#: 004052
Auth-CD: ELEC
Manual Tran Ind:
Signature:

KEEP YOUR RECEIPT!
I HAVE READ AND AGREE TO ALL RETURN AND REFUND POLICIES PRINTED ON THE BACK OF THIS RECEIPT AND POSTED IN THE STORE. I HAVE RECEIVED GOODS AND/OR SERVICES IN THE AMOUNT SHOWN ABOVE.
BESTBUY.COM RETURN AND EXCHANGE INFORMATION AND PRICE MATCH POLICY MAY VARY SLIGHTLY FROM IN-STORE POLICY. PLEASE LOG ONTO WWW.BESTBUY.COM FOR COMPLETE DETAILS
>>>>>>> ELECTRONIC COPY <<<<<<<

BEST BUY
0001047
APPLETON, WI 54915
Store Phone Number 920 738 4537

SALE

| Order: | Date: 03/18/08 04:24 PM | Term ID: 007 | Cashier#: 686241 |
|---|---|---|---|

| Product Code | Description | Quantity | Amount |
|---|---|---|---|
| 8454415 | DYNEX 19"WIDE ATSC LCD TV | 1 | 229.99 |
| 7888397 | 4YR 200-$299.99 LCD PSP | 1 | 39.99 |
| 5426693 | REWARD ZONE CARD | 1 | 0.00 |
| | | Subtotal | 269.98 |
| | | Tax | 13.50 |
| | | Total | 283.48 |

Acct#: XXXXXXXXXXXX9544
Payment Type: BBC CARD
Amount: 283.48
Card Type: PL2
Tran#: 4708231
Auth#: 009855
Auth-CD: ELEC
Manual Tran Ind:
Signature:

KEEP YOUR RECEIPT!
I HAVE READ AND AGREE TO ALL RETURN AND REFUND POLICIES PRINTED ON THE BACK OF THIS RECEIPT AND POSTED IN THE STORE. I HAVE RECEIVED GOODS AND/OR SERVICES IN THE AMOUNT SHOWN ABOVE.
BESTBUY.COM RETURN AND EXCHANGE INFORMATION AND PRICE MATCH POLICY MAY VARY SLIGHTLY FROM IN-STORE POLICY. PLEASE LOG ONTO WWW.BESTBUY.COM FOR COMPLETE DETAILS
>>>>>>> ELECTRONIC COPY <<<<<<<

[1] **90 days or 6 months no interest, with payment:** Minimum Monthly Payments required. Interest will be charged to your account from the date of purchase if plan balance is not paid in full within 90 days for the 90-day plan or 6 months for the 6-month plan or if minimum monthly payments are not made. **48 months low payments:** Valid for purchases $299 and up. 11.9% fixed APR and payments of 2.63% of the advertised purchase amount plus any late fees (not including sales tax or any other charges) for 48 months if your Account is current. **Financing Info:** Subject to credit approval on the Best Buy consumer credit card by HSBC Bank Nevada, N.A.

**IMPORTANT INFORMATION:**
**ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT**
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.
**What this means for you:**
When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

## HSBC Bank Nevada, N.A. Privacy Statement

**Our Commitment to You**
HSBC Bank Nevada, N.A. ("HSBC"), is proud to be part of a financial services organization that has been providing superior products and services to its customers for more than a century. We greatly appreciate the trust that you and millions of other customers have placed in us, and we protect that trust by respecting your privacy even if our relationship with you ends. This Privacy Statement illustrates our commitment to your privacy and explains our privacy practices so you can make an informed decision about whom you allow us to share your information with in order to offer you additional products and services. Although most customers enjoy receiving offers and information about additional products and services, if you prefer that we don't share your information for marketing purposes we will respect your choice.

**Types of Information We Collect**
It is important for you to know that in order to ensure that our customers get the very best service and the highest quality products, HSBC collects demographic information (such as your name and address) and credit information (such as information related to your accounts with us and others). This information comes either directly from you, for instance, from your application and transactions on your account; or, it may come from an outside source such as your credit bureau report. In addition, if you visit our Internet website, we may collect certain information about your Internet usage. Gathering this information helps us to identify our customers and manage our customer relationships. It also assists us in the development of products and services to meet the continuing needs of our customers.

**We Respect Your Privacy**
Since some of the information we gather is not publicly available, we take great care to ensure that this information is kept safe from unauthorized access. HSBC diligently maintains physical, electronic and procedural safeguards that comply with applicable federal standards to guard your non-public personal information and to assist us in preventing unauthorized access to that information.

**How We Share Information with Our Affiliates***

From time to time, for general business purposes such as fraud control, or when we think it may benefit you, we share certain information with other companies within our corporate family (i.e., Affiliates). These companies all provide financial services such as banking, consumer finance, insurance, mortgage, and brokerage services. Some examples include companies doing business under the names HFC®, Beneficial, or HSBC. We may also share certain information with non-financial service providers that become our Affiliates in the future (such as travel, auto and shopping clubs). The information we share might come from your application, such as your name, address, telephone number, social security number, and e-mail address. Also, the information we share could include your transactions with us or our Affiliates (such as your account balance, payment history, and parties to the transaction), your Internet usage, or credit card usage. Except for Vermont residents, the information we share with our Affiliates may also include your assets, income or credit reports which we collect from the sources described above. With this information, our Affiliates can determine if the products they specialize in, such as mortgages, automobile loans and insurance, may be of benefit to you.

**How We Share Information with Your Merchant/Dealer**

We may share non-public personal information with the merchant or dealer in whose name your credit card is issued which the merchant or dealer may use to market you for products and services unrelated to your account with us. The information we provide them may come from your application and might include your name, address, and telephone number. You may tell us not to share such information with the merchant or dealer for purposes unrelated to your account with us by calling the phone number listed below. For Vermont residents, Vermont law requires us to obtain your permission to share information about you in this way, and we have chosen not to share your information in this way.

**How We Share Information Outside the HSBC Family (Other than Your Merchant/Dealer)**

Except for California and Vermont residents, we also may share information with companies outside our corporate family (i.e., non-Affiliates) that are able to extend special offers we feel might be of value to you. These companies may be financial services providers (such as mortgage bankers or insurance product providers) or they may be non-financial companies (such as retailers or marketing companies). These offers are typically for products and services that you might not otherwise hear about. The information we may provide them comes from the sources described above and might include your name, address and phone number. For California and Vermont residents, applicable law requires us to obtain your permission in order to share your information in this way, and we have chosen not to share your information in this way.

We may also provide information to non-Affiliates that perform operational services related to your account or marketing services for us. Sharing information with these types of companies is permitted by law. Such a company might include a financial company (such as a mortgage banker or insurance service provider) with whom we have a joint marketing agreement or a non-financial company (such as a data processor or Internet service provider) with whom we have a service agreement. The information we may share also comes from the sources described above and might include your name, address, phone number and account experience with us.

Finally, we provide information about you to non-Affiliates such as credit reporting agencies and companies which provide services related to your account. This information sharing is also permitted by law.

**Privacy and Security on the Internet**

Our website offers you the opportunity to view your current account information and make payments online, in addition to providing general information about our company and products. You may view our Privacy Statement when you visit our website by clicking on the "Privacy Statement" link.

We reserve the right to change our privacy practices at any time in accordance with applicable law. Notice of such changes will be provided if required by applicable law.

**How to Request That Your Information Not Be Shared**

**Information Sharing With Our Affiliates***

If you do not want us to share your credit information (such as your credit bureau information) with our Affiliates, please let us know by simply calling us at 1-800-365-3804. We will be happy to comply with your request. Your request will not apply to information about your transactions or experience with us (such as account information, account usage, or payment history) and will only apply to the private label accounts you have with HSBC Bank Nevada, N.A. Private label accounts are not general purpose accounts such as MasterCard® or Visa®, but are accounts that may be used only at the specific merchant or merchants named on the credit card or account. An opt-out request by any party on a joint account will apply to all parties on the joint account. Vermont residents are automatically opted out from credit information sharing with our Affiliates.

**Information Sharing with Merchant/Dealer**

If you do not want us to share your non-public personal information with the merchant/dealer (unless we are permitted or required by law to do so), you will also need to let us know by simply calling us at 1-800-365-3804. We will be happy to comply with your request. Please understand that your request may exclude you from receiving valuable offers in the future. Your request will only apply to the private label accounts you have with HSBC Bank Nevada, N.A. An opt-out request by any party on a joint account will apply to all parties on the joint account. Opt-out requests will not apply to information sharing that is permitted by law. Vermont residents are automatically opted out from information sharing with the merchant/dealer that is not otherwise permitted or required by law.

**Information Sharing with Non-Affiliates (Other than Your Merchant/Dealer)**

If you do not want us to share your non-public personal information with non-Affiliates (unless we are permitted or required by law to do so), you will also need to let us know by simply calling us at 1-800-365-3804. We will be happy to comply with your request. Please understand that your request may exclude you from receiving valuable offers in the future. Your request will only apply to the private label accounts you have with HSBC Bank Nevada, N.A. An opt-out request by any party on a joint account will apply to all parties on the joint account. Opt-out requests will not apply to information sharing that is permitted by law. California and Vermont residents are automatically opted out from information sharing with non-Affiliates.

**How to Be Removed from Solicitation Lists of Companies Participating in the Direct Marketing Association (DMA) Preference Service**

If you wish to be removed from mailing solicitation lists at a national level, please send your name and address (with zip code) to the Direct Marketing Association at the following address: Mail Preference Service (DMA), P. O. Box 9008, Farmingdale, NY 11735-9008.

*"Affiliates" are companies that are related to us by common ownership or corporate control. Our Affiliates include HFC®, Beneficial®, HSBC Automotive Finance Corporation, HSBC Insurance Services, and HSBC companies such as HSBC Bank USA, and HSBC Mortgage Corporation.

Truth In Lending Disclosure Chart For Best Buy Credit Card

Program A

| Annual Percentage Rate (APR) for Purchases (based on your creditworthiness) | As of 1/1/07 the Standard Rate is **22.65%**, which may vary. |
|---|---|
| Other APRs | Default Rate: **26.65%** as of 1/1/07, which may vary.† |
| Variable-rate Information | Your APR may vary. The Standard Rate for purchases is determined monthly by adding 14.4% to the Prime Rate. The Default Rate is determined monthly by adding 18.4% to the Prime Rate.†† |
| Grace Period for Repayment of Balance for Purchases | No finance charges are assessed on new purchases if the balance is paid in full each month within 25 days after the billing date. |
| Method of Computing the Balance for Purchases | Two Cycle Average Daily Balance (Including new purchases) |
| Annual Fees | NONE |
| Minimum Finance Charge | $2.00 |
| Transaction Fee for Purchases | NONE |
| Late Payment Fee: $10 for combined account balance of $100 or less; $29 for combined account balance from $100.01 to $1,000; $35 for combined account balance of $1,000.01 or more.<br>Overlimit Fee: $0 | |

† If you fail to make two consecutive Total Minimum Payments Due and are 30 days past due, you will no longer be eligible for the Standard Rate and all existing Promotional Credit Plans will terminate, and your entire Account balance will be subject to the Default Rate.

†† **Program A:** Your APR may vary and is based on the highest of the U.S. Prime Rate(s) published in *The Wall Street Journal* "Money Rates Section" on the first or last day of the month that *The Wall Street Journal* is published, plus a "Spread" of 14.4 percentage points for the Standard Rate and a "Spread" of 18.4 percentage points for the Default Rate. Any changes in the Prime Rate will take effect on the first day of your billing cycle beginning in the next month. The Standard Rate will never be less than 19.8%. The Default Rate will never be less than 23.8%.

Truth In Lending Disclosure Chart For Best Buy Credit Card

Program B

Initial if approved for Program B.

| Annual Percentage Rate (APR) for Purchases (based on your creditworthiness) | As of 1/1/07 the Standard Rate is **25.65%**, which may vary. |
|---|---|
| Other APRs | Default Rate: **29.65%** as of 1/1/07, which may vary.* |
| Variable-rate Information | Your APR may vary. The Standard Rate for purchases is determined monthly by adding 17.4% to the Prime Rate. The Default Rate is determined monthly by adding 21.4% to the Prime Rate.** |
| Grace Period for Repayment of Balance for Purchases | No finance charges are assessed on new purchases if the balance is paid in full each month within 20 days after the billing date. |
| Method of Computing the Balance for Purchases | Two Cycle Average Daily Balance (Including new purchases) |
| Annual Fees | NONE |
| Minimum Finance Charge | $2.00 |
| Transaction Fee for Purchases | NONE |
| Late Payment Fee: $35 for combined account balance of $250 or less; $39 for combined account balance of $250.01 or more.<br>Overlimit Fee: $0 | |

* If you fail to make your Total Minimum Payment Due by your next statement date two or more times in 12 consecutive months, you will no longer be eligible for the Standard Rate and all existing Promotional Credit Plans will terminate, and your entire Account balance will be subject to the Default Rate.

** **Program B:** Your APR may vary and is based on the highest of the U.S. Prime Rate(s) published in *The Wall Street Journal* "Money Rates Section" on the first or last day of the month that *The Wall Street Journal* is published, plus a "Spread" of 17.4 percentage points for the Standard Rate and a "Spread" of 21.4 percentage points for the Default Rate. Any changes in the Prime Rate will take effect on the first day of your billing cycle beginning in the next month. The Standard Rate will never be less than 23.15%. The Default Rate will never be less than 27.15%.

**NOTICE FOR MARRIED WISCONSIN RESIDENTS:** No provision of a marital property agreement (including a Statutory Terminable Marital Property Classification Agreement under Sec. 766.588 Wis. Stats., or a Statutory Terminable Individual Property Classification Agreement under 766.70) adversely affects the interest of the creditor unless the creditor, prior to the time the credit is granted, is furnished a copy of the agreement, statement or decree or has actual knowledge of the adverse provision when the obligation to the creditor is incurred.

**NOTICE FOR CALIFORNIA RESIDENTS:** California law requires that we inform customers that should they fail to fulfill the terms of their credit obligation, a negative report reflecting on their credit record may be submitted to a credit reporting agency. If you are married, you may apply for credit in your own name.

**NOTICE FOR FLORIDA RESIDENTS: You (borrower) agree that, should we obtain a judgment against you, a portion of your disposable earnings may be attached or garnished (paid to us by your employer), as provided by Florida and Federal law.**

**NOTICE FOR MAINE RESIDENTS:** We may request a consumer report in connection with your application for credit. You may ask whether a consumer report was obtained by us and we will tell you the name and address of the consumer reporting agency, if a report was obtained.

**NOTICE FOR NEW YORK RESIDENTS:** A consumer credit report may be requested in connection with this application or in connection with updates, renewals or extensions of any credit granted as a result of this application. Upon your request, you will be informed whether or not such a report was requested and, if so, the name and address of the agency that furnished the report. New York residents may contact the New York state banking department to obtain a comparative listing of credit card rates, fees and grace periods. New York State Banking Department: 1-800-522-3330.

**NOTICE FOR OHIO RESIDENTS:** The Ohio Laws against discrimination require that all creditors make credit equally available to all creditworthy customers and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

**NOTICE FOR VERMONT RESIDENTS:** A consumer credit report may be requested in connection with this application or in connection with updates, renewals or extensions of any credit granted as a result of this application. Upon your request, you will be informed whether or not such a report was requested and, if so, the name and address of the agency that furnished the report.

## IMPORTANT TERMS OF BEST BUY CREDIT CARD

**1. GENERAL:** Each person signing and submitting, or electronically or telephonically submitting the application for a credit card account ("Account") as applicant or joint applicant applies for an Account with HSBC Bank Nevada, N.A., a national banking association, and requests one or more credit card(s) bearing the name or tradename of Best Buy to be used in connection with the Account. The word "Card" means any credit card(s) issued to you or an authorized user of your Account. In this Agreement, the words "you" and "your" refer to the applicant and joint applicant named on the credit card application and the words "we", "us" and "our" refer to HSBC Bank Nevada, N.A., located at 1111 Town Center Drive, Las Vegas, Nevada 89144. If based on your creditworthiness, we determine you do not qualify for Program A, you agree we may consider you for an account with the terms and conditions of Program B. If approved for Program B, you agree to its terms and conditions.

If your application is approved, "applicant" will be referred to as "primary cardholder" and "joint applicant" will be referred to as "secondary cardholder" for purposes of this agreement.

If we accept your application to open an Account, you agree that you will only purchase goods and services for personal, family and household purposes from merchants which honor the Card.

**2. FINANCE CHARGES:** (a) Finance Charges, which are part of the interest on your Account, are calculated separately for each Promotional Credit Plan and each Regular Credit Plan (each a "Credit Plan"). Promotional Credit Plans with different promotional due dates or terms are treated as different Credit Plans for this purpose. The total Finance Charge for the billing cycle is the sum of the Finance Charges for each Credit Plan, subject to the minimum Finance Charge under Section 3.

(b) Finance Charges are imposed on purchases from the transaction date until paid in full, except that no Finance Charge is imposed in a billing cycle ("Current Cycle") on:

(i) a new purchase on a Regular, Delayed Monthly Payment, Reduced Rate, or Special Repayment Factor Credit Plan if the combined Previous Balance of those Credit Plans at the beginning of the Current Cycle is zero or a credit balance, or is paid in full before the Payment Due Date that falls during the Current Cycle;

(ii) any balance on a Regular, Delayed Monthly Payment, Reduced Rate, or Special Repayment Factor Credit Plan if the combined Previous Balance of those Credit Plans at the beginning of the Current Cycle is zero or a credit balance, or is paid in full before the Payment Due Date that falls during the Current Cycle and the combined New Balance of those Credit Plans at the beginning of the previous billing cycle ("Previous Cycle") is zero or a credit balance, or is paid in full before the Payment Due Date that falls during the Previous Cycle;

(iii) a purchase on a Waived Finance Charge Credit Plan for the specified promotional period;

(iv) a purchase on a Same As Cash Credit Plan if the full cash sales price is paid in full before the promotional due date.

(c) If a Finance Charge is imposed on a Credit Plan other than a Same As Cash Credit Plan in the Current Cycle, the amount will be the sum of the following daily Finance Charge calculations for the Credit Plan during the Current Cycle and (if applicable) the previous billing cycle ("Previous Cycle"): (i) the applicable Daily Periodic Rate for the Current Cycle times the Daily Balance for each day in the Current Cycle; and (ii) the applicable Daily Periodic Rate for the Previous Cycle times the Daily Balances of any new purchases on the Credit Plan during the Previous Cycle on which Finance Charges were not imposed during the Previous Cycle.

(d) If a Finance Charge is imposed on a Same As Cash Credit Plan, the amount will be the sum of the following daily Finance Charge calculations for the Credit Plan during the Current Cycle and each of the prior billing cycles (each a "Prior Cycle") from the transaction date of the purchase until the Current Cycle: (i) the applicable Daily Periodic Rate for the Current Cycle times the Daily Balance for each day in the Current Cycle; and (ii) the applicable Daily Periodic Rate for each Prior Cycle times the Daily Balances of the Credit Plan for each day during each Prior Cycle.

(e) The "Daily Balance" of a Credit Plan is determined by taking the opening balance of the Credit Plan for that day, adding any new purchases made on the Credit Plan that day and subtracting any payments or credits applied to the Credit Plan that day. For purposes of determining the Daily Balance of the Previous Cycle, the only purchases considered are new purchases on which Finance Charges were not imposed in the Previous Cycle. The previous day's Finance Charges and credit insurance premiums or debt cancellation fees (if applicable) are included in the Daily Balance of a Credit Plan, except that for any Same As Cash Credit Plan, credit insurance premiums or debt cancellation fees (if applicable) are not included in the Daily Balance of that Credit Plan during the promotional period. Late fees, overlimit fees, returned check fees and other fees on the Account are added to the Daily Balance of a Credit Plan when imposed. If a purchase on a Credit Plan posts after the beginning of a billing cycle, but the transaction occurred prior to the beginning of the billing cycle, the amount of the transaction plus related Finance Charges outstanding on each day from the transaction date until the first day of the billing cycle in which the transaction posts will be added to the Daily Balance of the Credit Plan for the first day of the billing cycle in which the transaction posts.

(i) **For Program A:** The Daily Periodic Rate which is used to determine your Finance Charges and the corresponding Annual Percentage Rate, will be variable rates which may change monthly. The Daily Periodic Rate will be one-three hundred sixty fifth of the sum of the highest of the Prime Rate(s) published in *The Wall Street Journal* "Money Rates Section" on the first or last day of the month that *The Wall Street Journal* is published, plus a "Spread" of **14.4** percentage points for the Standard Rate and a "Spread" of **18.4** percentage points for the Default Rate. Any changes in the Prime Rate will take effect on the first day of your billing cycle beginning in the next month. The minimum rate of **Finance Charge** for the Standard Rate is a Daily Periodic Rate of **.05425%** (corresponding **19.8% Annual Percentage Rate**). The minimum rate of **Finance Charge** for the Default Rate is a Daily Periodic Rate of **.06521%** (corresponding **23.8% Annual Percentage Rate**). For example, as of the billing cycle beginning January 1, 2007, the Finance Charge for the Standard Rate would have been a Daily Periodic Rate of **.06205%** (corresponding **22.65% Annual Percentage Rate**) and the Finance Charge for the Default Rate would have been a Daily Periodic Rate of **.07301%** (corresponding **26.65% Annual Percentage Rate**). An increase in the Prime Rate will increase your applicable Daily Periodic Rate which may increase the Finance Charge and the Minimum Monthly Payment due on your Account. You will qualify for the Standard Rate until you have failed to make two consecutive Total Minimum Payments Due and are 30 days past due.

**For Program B:** The Daily Periodic Rate which is used to determine your Finance Charges and the corresponding Annual Percentage Rate, will be variable rates which may change monthly. The Daily Periodic Rate will be one-three hundred sixty fifth of the sum of the highest of the Prime Rate(s) published in *The Wall Street Journal* "Money Rates Section" on the first or last day of the month that *The Wall Street Journal* is published, plus a "Spread" of **17.4** percentage points for the Standard Rate and a "Spread" of **21.4** percentage points for the Default Rate. Any changes in the Prime Rate will take effect on the first day of your billing cycle beginning in the next month. The minimum rate of **Finance Charge** for the Standard Rate is a Daily Periodic Rate of **.06342%** (corresponding **23.15% Annual Percentage Rate**). The minimum rate of **Finance Charge** for the Default Rate is a Daily Periodic Rate of **.07438%** (corresponding **27.15% Annual Percentage Rate**). For example, as of the billing cycle beginning January 1, 2007, the Finance Charge for the Standard Rate would have been a Daily Periodic Rate of **.07027%** (corresponding **25.65% Annual Percentage Rate**) and the Finance Charge for the Default Rate would have been a Daily Periodic Rate of **.08123%** (corresponding **29.65% Annual Percentage Rate**). An increase in the Prime Rate will increase your applicable Daily Periodic Rate which may increase the Finance Charge and the Minimum Monthly Payment due on your Account. You will qualify for the Standard Rate until you fail to make your Total Minimum Payment Due by your next statement date two or more times in 12 consecutive months.

**3. MINIMUM FINANCE CHARGE:** A minimum **Finance Charge** of $2.00 will be assessed for each billing cycle in which a Finance Charge is payable.

**4. FEES:** We may impose on your Account the following fees, which will be added to your Account when assessed:

a) **Late Payment Fee: Program A:** Your Late Payment Fee will be based on your combined account balance (less any Delayed Monthly Payment credit plan balances) at the time of your payment due date. If you fail to pay us the Total Minimum Payment Due in full by the Payment Due Date on your billing statement, you agree to pay a Late Payment Fee of $10 for combined account balance of $100 and below; $29 for combined account balance of $100.01 to $1,000; and $35 for combined account balance of $1,000.01 and over. **Program B:** Your Late Payment Fee will be based on your combined account balance (less any Delayed Monthly Payment credit plan balances) at the time of your payment due date. If you fail to pay us the Total Minimum Payment Due in full by the Payment Due Date on your billing statement, you agree to pay a Late Payment Fee of $35 for combined account balance of $250 and below; and $39 for combined account balance of $250.01 and over.

b) **Returned Check Fee: Program A:** You agree to pay $25 each time any payment check on your Account is returned unpaid by your bank or other financial institution for any reason. **Program B:** You agree to pay $39 each time any payment check on your Account is returned unpaid by your bank or other financial institution for any reason.

c) **Document and Research Fees:** If you ask us to provide you with a replica of your sales slip, billing statement or other document (except in connection with a billing error claimed in accordance with "Your Billing Rights"), we may charge you the following fees: (i) Billing statement: $5 per statement (ii) Sales/credit slip:$5 per transaction; (iii) Payment Instrument:$5 per payment; and, (iv) Research fee: $15 per hour. Payment Histories: You will be charged the applicable research fee in addition to the following itemization fees. For requests involving statement activity within the last 12 months - $7.50; activity within the last 13-48 months - $11.25; and activity within the last 49-72 months - $22.50. We reserve the right to change the Document and Research Fee Schedule from time to time. You may call Customer Service for a current fee schedule.

d) **Reissued Card Fee:** You may be charged $5 each time you request that your credit card be reissued.

e) **Direct Check Fee:** In the event that you pay your account with a direct check, you agree to pay up to a $15 fee for each direct check. We reserve the right to change the Direct Check Fee from time to time. You may call Customer Service for a current fee schedule.

f) **Overlimit Fee:** In the event you exceed your credit limit, you will be charged an Overlimit Fee of $0.

g) **Collection Costs:** If, after you default, we refer your Account to an attorney and/or collection agency for collection, we may charge you our collection costs, including court costs and reasonable attorneys' fees, when and as permitted by applicable law.

**5. SECURITY:** Except as indicated below, you grant us a purchase money security interest in the goods purchased with your Card. Each good purchased on your Account will secure the entire Account balance until such good is paid in full. For purposes of determining which goods are subject to a security interest, payments received will be deemed to be applied first to any unpaid insurance premiums or debt cancellation fees (if applicable), Finance Charges, and fees and then to pay for purchases on the Account in the order in which they were made. When sufficient payments are made to repay the portion of the Account balance attributable to the purchase of a particular good, we will release our purchase money security interest in that good. Goods covered by a security interest may be taken from you if you do not pay on time. We may require you to make them available at a convenient place of our choice. We waive any security interest in your home if the goods are installed and in any goods purchased with credit card checks. We take no security interest in goods where the original purchase price is less than $200 if you live in New York and in goods where the original purchase price is less than $700 if you live in Maryland. If we repossess any goods purchased with your Card, we may charge you our repossession costs including, but not limited to, necessary repairs, storage fees and costs of sale, when and as permitted by law.

**6. ARBITRATION:** Any claim, dispute, or controversy between you and us (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, cross-claims and third party claims, arising from or relating to this Agreement or the relationships which result from this Agreement, and except as provided below, the validity, enforceability, or scope of this arbitration provision, any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed. The party initiating the arbitration proceeding shall have the right to select one of the following arbitration administrators (the "Administrator"): the American Arbitration Association ("AAA") or the National Arbitration Forum ("NAF"). The arbitrator shall be a lawyer with

Case 09-25196-mdm Doc 14 Filed 08/31/09 Page 16 of 18

more than ten years experience or a retired or former judge. We agree not to invoke our right to arbitrate an individual Claim you may bring in small claims court or an equivalent court, if any, so long as the Claim is pending only in that court. The rules and forms of the AAA and the NAF may be obtained by writing to these organizations at the addresses listed below. Our address for service of process under this provision is HSBC Bank Nevada, N.A., P.O. Box 279, Mount Prospect, IL 60056.

Any participatory arbitration hearing that you attend will take place in the city nearest to your residence where a federal district court is located or at such other location as agreed by the parties. On any Claim you file, you will pay the first $50 of the filing fee. At your request we will pay the remainder of the filing fee and any administrative or hearing fees charged by the Administrator on any Claim submitted by you in arbitration up to a maximum of $1,500. If you are required to pay any additional fees to the Administrator, we will consider a request by you to pay all or part of the additional fees; however, we shall not be obligated to pay any additional fees unless the arbitrator grants you an award. If the arbitrator grants an award in your favor, we will reimburse you for any additional fees paid or owed by you to the Administrator up to the amount of the fees that would have been charged if the original Claim had been for the amount of the actual award in your favor. The parties shall bear the expense of their respective attorney's fees, except as otherwise provided by law. If a statute gives you the right to recover any of these fees, or the fees paid to the Administrator, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary contained herein. If the arbitrator issues an award in our favor you will not be required to reimburse us for any fees we have previously paid to the Administrator or for which we are responsible.

This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1 - 16 (the "FAA"). The arbitrator shall apply applicable substantive law consistent with the FAA and, if requested by either party, provide written reasoned findings of fact and conclusions of law. Judgment upon the award may be entered in any court having jurisdiction. The arbitrator's award will be final and binding except for: (a) any appeal right under the FAA; and (b) any appeal of Claims involving more than $100,000. For such Claims, any party may appeal the award to a three arbitrator panel appointed by the Administrator, which will reconsider de novo (i.e., in its entirety) any aspect or all aspects of the initial award that is appealed. The panel's decision will be final and binding, except for any appeal right under the FAA. Unless applicable law provides otherwise, the appealing party will pay the appeal's costs (i.e., the amounts owed to the Administrator and the arbitrators), regardless of its outcome. However, we will consider in good faith any reasonable request for us to bear up to the full costs of the appeal.

This arbitration agreement shall survive termination of your Account as well as the repayment of all amounts borrowed hereunder. If any portion of this arbitration agreement is deemed invalid or unenforceable under any law or statute consistent with the FAA, it shall not invalidate the remaining portions of this arbitration agreement or the Agreement. In the event of a conflict or inconsistency between the rules and procedures of the Administrator and this arbitration agreement, this arbitration agreement shall govern. Notwithstanding any language in this arbitration provision to the contrary, no arbitration may be administered, without the consent of all parties to the arbitration, by any organization that has in place a formal or informal policy that is inconsistent with and purports to override the terms of this arbitration provision, including the Class Action Waiver Provision defined below.

No class actions or private attorney general actions in court or in arbitration or joinder or consolidation of any claims in Court or in arbitration with other persons, are permitted without the written consent of you and us. The validity and effect of the preceding sentence (herein referred to as the "Class Action Waiver Provision") shall be determined exclusively by a court and not by the Administrator or any arbitrator. Neither the Administrator nor any arbitrator shall have the power or authority to waive, modify or fail to enforce the Class Action Waiver Provision, and any attempt to do so, whether by rule, policy arbitration decision or otherwise, shall be invalid and unenforceable.

**THE PARTIES ACKNOWLEDGE THAT THEY HAD A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY.**

You may contact, obtain the arbitration rules of, or file a Claim with AAA or NAF, as follows:

| American Arbitration Association | National Arbitration Forum |
|---|---|
| 335 Madison Avenue | P.O. Box 50191 |
| New York, NY 10017 | Minneapolis, MN 55405 |
| www.adr.org | www.adrforum.com |

As used in this arbitration provision, the term "we", "us", and "our" shall mean HSBC Bank Nevada, N.A., its parents, subsidiaries, affiliates, predecessors, successors, assigns, and each of their officers, directors, and employees.

**7. MONITORING PRACTICES:** You agree that our supervisory personnel may listen to and record telephone calls between you and our representatives in order to evaluate the quality of our service to you and other cardmembers.

**The information about the costs of the Card described in this application and important Terms of Best Buy Credit Card is accurate as of January, 2007. This information may have changed after that date. To find out what may have changed write to us at 1111 Town Center Drive, Las Vegas, Nevada 89144.**

## YOUR BILLING RIGHTS—KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case of Errors or Questions About Your Bill:** If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error.
- If you need more information, describe the item you are not sure about.

**Your Rights and Our Responsibilities After We Receive Your Written Notice:** We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases:** If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right: (a) You must have made the purchase in your home state or, if not within your home state within 100 miles of your current mailing address; and (b) The purchase price must have been more than $50. These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

## ACCOUNT SHIELD℠ SUMMARY

**IMPORTANT INFORMATION:** The Account Shield feature only applies to the primary cardholder (herein referred to as "You" and "Your"). **Your purchase of Account Shield is optional, and whether or not You enroll will not affect Your application for credit or the terms of any existing agreement You have with HSBC Bank Nevada, N.A. (herein referred to as "We" or "Us").** Account Shield is sold by Us and the fees will be billed to Your credit card account. Upon acceptance of Your enrollment, You will receive Your Contract Provisions which will state the terms and conditions of Account Shield. Account Shield is a debt cancellation product and is not insurance. The Contract Provisions of Account Shield are an optional addendum to Your Cardholder Agreement. This document is only a summary of the Account Shield feature. **Please read Your Contract Provisions carefully for details of Your protection. There are eligibility requirements, conditions and exclusions that could result in no benefits. You can find a complete explanation of the eligibility requirements, conditions and exclusions throughout Your Account Shield Contract Provisions.**

Account Shield is unavailable in Mississippi, Guam, the Virgin Islands, Puerto Rico and Canada.

**PROPERTY DAMAGE OR LOSS:** If there is damage or loss to merchandise purchased on Your credit card account, Account Shield will cancel from Your account an amount equal to the cost of repairing or replacing the merchandise up to the balance existing as of the date of the Qualifying Event, not to exceed $10,000.

**TOTAL DISABILITY:** Following 30 consecutive days of Total Disability, You are eligible for a cancellation of part of Your account's balance. Account Shield will cancel an amount equal to 10% of Your account's balance on the date You became totally disabled, up to $1,000 for each month that You remain totally disabled, not to exceed $10,000. You must have been employed full-time (but not self-employed or working for a spouse or any other individual living with You on whom You are financially dependent for support and maintenance, or employed on a part-time basis) and working 30 hours or more per week at a single job on the date Total Disability began. If Total Disability occurs within 180 days of the date You either (1) elect Account Shield or (2) make a purchase or advance on Your account and Your Total Disability results from a preexisting medical condition as defined in the Contract Provisions, You may not receive a cancellation of debt for that Total Disability.

**INVOLUNTARY UNEMPLOYMENT:** Following 30 consecutive days of Involuntary Unemployment, You are eligible for a cancellation of part of Your account's balance. Account Shield will cancel an amount equal to 10% of Your account's balance on the date You became involuntarily unemployed, up to $1,000 for each month that You remain involuntarily unemployed. There is a maximum number of 6 continuous monthly cancellations. You must have been employed full-time (but not self-employed or working for a spouse or any other individual living with You on whom You are financially dependent for support and maintenance, or employed on a part-time basis) and working 30 hours or more per week at a single job on the date of Involuntary Unemployment (this includes loss of employment due to unionized labor disputes, strikes, lock-outs and temporary lay-offs).

**LOSS OF LIFE:** If You die, Account Shield will cancel the balance on Your account on the date of death, up to $10,000. Suicide is not a Qualifying Event.

**TERMINATION / REINSTATEMENT: You may terminate Your Account Shield feature at any time. If You choose to terminate Your Account Shield feature within 60 days of enrollment, We will credit Your account for any fees that You have been charged for Account Shield during this period. We may terminate Your Account Shield feature, for any reason, by giving You written notice at least 30 days in advance of termination. We will automatically terminate Your Account Shield feature on the first date We become aware of a misrepresentation of information by You. If Your account becomes 3 billing cycles past due, Your participation in Account Shield will be suspended. Your participation will be reinstated effective when Your account again becomes less than 3 billing cycles past due. You will not be protected for any Qualifying Event that begins or occurs during the time that Your participation in Account Shield is suspended.**

**COST: The monthly charge rate for the Account Shield feature is $0.90 per $100 of Your average daily balance each month (including any deferred balance). We reserve the right to increase the rate in which case You will be notified in writing at least 30 days in advance of the increase.**

**ADDITIONAL IMPORTANT INFORMATION:**

- **We reserve the right to modify the Contract Provisions, but if the modification is not favorable to You or if there is an additional charge, We will first provide You with notice of the proposed change and an opportunity to terminate this program without penalty before the change takes effect.**
- Account Shield is only offered as a package and its components are not available separately.
- You may be subject to federal, state and local taxes on the amount of Your cancelled balance. Please consult Your tax advisor for guidance on the tax implications, if any, of Account Shield.
- During the qualification period and the time it takes to process Your cancellation, Your account balance is not suspended or cancelled. You remain responsible for finance charges and minimum payment requirements on Your account until the balance is paid off or a cancellation takes place. **Once Your cancellation is processed (except for cancellation due to Property Damage or Loss), Your account will not accept any authorizations for purchases, cash advances, or any other transactions. Your account will remain inactive until Your benefit period ends.**
- There is no limit on the overall number of Account Shield cancellations You may have. However, there is a limit on consecutive monthly cancellations for Involuntary Unemployment as described above. To be eligible for subsequent Account Shield cancellations, You must first be actively working continuously full time for at least 180 days and meet all contractual qualifications prior to each Qualifying Event.

DC-14-11 Ed. 08/01/06

REV120606